United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 08, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-31973 |
| CARBO CERAMICS, INC., *et al.*, | § § § | CHAPTER 11 |
| | § | |
| Debtors. | § § | |
| CARBO CERAMICS, INC., | § § | |
| Plaintiff, | § § | |
| VS. | § § | ADVERSARY NO. 21-3031 |
| BOARD OF TAX ASSESSORS FOR WILKINSON COUNTY GEORGIA, *et al.*, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR RECONSIDERATION

CARBO Ceramics moves for reconsideration of the Court's April 12, 2023, Memorandum Opinion. The Court has already considered and rejected most of CARBO's arguments. CARBO's remaining arguments fail. The motion for reconsideration is denied.

## BACKGROUND

On April 12, 2023, the Court issued its Memorandum Opinion holding that CARBO was not permitted to claim additional depreciation in calculating payments in lieu of taxes (PILOTs) under its bond-for-title agreement with Wilkinson County, Georgia. ECF No. 98 at 16. The Court issued an order concurrently with its Memorandum Opinion. The Court ordered the parties to file a status report explaining what issues

remained to be decided in this case. ECF No. 99. CARBO took this as an opportunity to file a brief disagreeing with the Court's opinion. ECF No. 107. CARBO did not file a status report explaining what issues remained.

The Court scheduled a hearing on June 21, 2023, to determine the amount, if any, of attorneys' fees and expenses to be awarded to the Board of Tax Assessors for Wilkinson County, Georgia, and Wilkinson County, Georgia. ECF No. 109. The Assessors and County failed to timely file their exhibits for the hearing. The Court ordered the parties to meet and confer to discuss the amount of litigation expenses incurred by the Assessors and County due to their dispute with CARBO. The Court allowed CARBO to file a motion for reconsideration explaining its disagreements with the Court's opinion. The parties have reached a stipulation regarding the amount of litigation expenses incurred. ECF No. 116 at 2. The Assessors' and County's entitlement to attorneys' fees is determined in a separate opinion.

The Court now decides CARBO's motion for reconsideration. The motion is denied.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Shephard v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). A motion for reconsideration "may be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment or order." *Id.* (citing *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th

Cir. 1998)). Federal Rules of Civil Procedure 59(e) and 60(b) are made applicable to bankruptcy proceedings under Federal Rules of Bankruptcy Procedure 9023 and 9024, respectively.

If a motion for reconsideration is filed within 14 days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion. *Shephard*, 372 F.3d at 328 n.1. CARBO's motion for reconsideration was filed over two months after the Court issued its opinion and order. ECF Nos. 98, 117. CARBO's motion must be decided under Bankruptcy Rule 9024, which incorporates Rule 60(b). Fed. R. Bankr. P. 9024.

Rule 60 provides courts with a basis to make corrections when they are based on clerical mistakes, oversights, or omissions, as well as to grant relief to parties from a final judgment, order, or proceeding. Fed. R. Civ. P. 60. Rule 60 states the basis for which a court can grant relief to a party:

> On motion and just terms, the court may relieve a party or its legal representative from final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 69(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;

>(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
>(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)–(6).

CARBO's motion for reconsideration does not meet any of the reasons justifying relief under Rule 60(b).

### I. THE ASSESSORS' PROOFS OF CLAIM DID NOT PRECLUDE ANY CLAIM FOR PAYMENTS PURSUANT TO THE PARTIES' MOU AND LEASE AGREEMENTS

CARBO claims the Assessors' proofs of claim "constitute judicial admissions that BOTA's claims against CARBO do not arise under either the Lease or MOU." ECF No. 117 at 4. CARBO quotes the Assessors' original and amended proofs of claim, which state that the claim is not based on a lease and constitutes taxes or penalties owed to governmental units. ECF No. 74-33 at 2–3; ECF No. 74-34 at 2–3. CARBO also asks the Court to "clarify for the parties that BOTA's demands for additional payments constitute general, unsecured, pre-petition Class 4 contract claims, and not priority claims for taxes, and disallow BOTA's secured priority tax Proof of Claim." ECF No. 117 at 3. CARBO makes only two passing remarks on this issue and fails to provide any supporting reasoning. ECF No. 117 at 3, 20.

Although a proof of claim may constitute a creditor's judicial admission, the only reasonable interpretation of the Assessors' proofs of claim is that they claim taxes against CARBO's estate. *See In re Perry*, 394 B.R. 852, 857 (Bankr. S.D. Tex. 2008). This does not preclude the Assessors' claims against CARBO in this adversary proceeding. This adversary proceeding adjudicated whether CARBO owes additional payments in lieu of taxes under the parties' MOU and lease agreements.

The issues set for trial in the parties' joint pretrial statement were limited to answering this question. ECF No. 69 at 5–6.

The contested issues of fact listed in the parties' joint pretrial statement included "[t]he functional obsolescence . . . applicable to the personal property, machinery, and equipment at the McIntyre and Toomsboro Plants," "[t]he economic obsolescence" applicable to the property, and "[t]he appropriate inutility penalty" applicable to the property, and "[w]hether the Assessors have acted in bad faith, been stubbornly litigious, or have caused CARBO unnecessary trouble and expense, to warrant an award of litigation expenses . . . ." ECF No. 69 at 5–6; ECF No. 73 at 6. The contested issues of law to be adjudicated included "CARBO's legal entitlement to recover attorneys' fees" and "Wilkinson County's right to recover penalties or attorneys' fees." ECF No. 69 at 6–7; ECF No. 73 at 7. Although CARBO objected to the Assessors' proof of claim, its validity was never an issue set for adjudication. ECF No. 34 at 10; *see McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996) (internal quotation marks omitted) ("It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." (quoting *Branch–Hines v. Hebert,* 939 F.2d 1311, 1319 (5th Cir.1991))).

The Court will not consider the validity of the Assessors' proof of claim.

## II. THE ASSESSORS' AND COUNTY'S COUNTERCLAIM IS NOT DEFECTIVE

CARBO claims the Assessors' counterclaim is defective. CARBO argues that "BOTA . . . has no independent authority to sue for or collect additional taxes or PILOT fees, a power that lies exclusively with the county tax commissioner," and the "Tax Commissioner, the Development Authority and the County did not join in the Counterclaim." ECF No. 117 at 6.

The Assessors are a party to the MOU and are Wilkinson County's administrative agent in charge of assessing *ad valorem* taxes. ECF No. 73 at 5; ECF No. 74-30 at 133, 148; Ga. Code Ann. §§ 48-5-299, 48-5-299.1. This adversary proceeding was brought to determine whether CARBO owes additional payments or is entitled to a refund under the parties' bond-for-title agreement, which turns on the assessed values of property subject to the MOU and lease. Wilkinson County, to whom CARBO pays yearly PILOTs, is also a party to the counterclaim. ECF No. 21 at 1; ECF No. 70-26 at 142; *see, e.g.*, Ga. Code Ann. § 48-5-233.

The Assessors and County are proper parties to litigate this adversary proceeding.

CARBO also argues, because the Assessors' counterclaim states a claim for failure to pay *ad valorem* taxes, "it has not asserted . . . claims for PILOT fees under the MOU . . . ." ECF No. 117 at 3. This is a distinction without a difference. Under Federal Rule of Civil Procedure 8(a)(2), a pleading that states a claim for relief requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Assessors' counterclaim explains the parties' bond-for-title agreement and states a claim for payments owed under the agreement. *See* ECF No. 21 at 8–15. The counterclaim sufficiently explains the basis of the Assessors' claim, irrespective of whether the Assessors chose to use "PILOTs" or "*ad valorem* taxes" as the nomenclature for the payments they claim to be owed. CARBO, who itself repeatedly referred to the challenged payments as taxes, cannot seriously contest the use of the phrase. *See, e.g.*, ECF Nos. 1, 4, 73, 43.

The Assessors' counterclaim is not defective.

### III. THE ASSESSORS DID NOT WAIVE ANY CLAIMS DUE TO THE PARTIES' JOINT PRETRIAL STATEMENT

CARBO claims that the parties' joint pretrial statement listed four contested issues to be litigated at trial: the functional obsolescence of certain property at CARBO's plants, the economic obsolescence of the

property, the appropriate inutility penalty applicable to the property, and whether the Assessors acted in bad faith to warrant an award of litigation expenses in CARBO's favor. ECF No. 117 at 6. CARBO argues the Assessors did not assert any claims under the MOU or lease, or claims for recovery of litigation expenses, and have thereby waived such claims. ECF No. 117 at 6–7.

The Court does not see how the evidence collected at trial, or the Court's memorandum opinion, is inconsistent with the contested issues of fact listed in the parties' joint pretrial statement. The listed factual issues were in dispute for the purpose of determining whether CARBO failed to remit the amount of payments required under the MOU and lease agreements. This turned on determining whether CARBO was entitled to claim additional depreciation through obsolescence and inutility. The evidence collected at trial was directed toward these issues, which the Court ruled on in its Memorandum Opinion.

With respect to the Assessors' claim for litigation expenses, no waiver has occurred. Contrary to CARBO's claim, the parties' joint pretrial statement specifically lists "Wilkinson County's right to recover penalties or attorneys' fees" as a contested issue of law to be adjudicated. ECF No. 69 at 7; ECF No. 73 at 7 ("right to recover penalties"). Although the Assessors and County did not plead attorneys' fees in their answer and counterclaim (ECF No. 21), federal courts apply federal law in determining whether a party sufficiently pled attorney's fees. *N.Y. Pizzeria, Inc. v. Syal*, No. 3:13-cv-00335, 2017 WL 1313759, at *3 (S.D. Tex. Apr. 5, 2017). Under federal law, a claim for attorney's fees must be filed by motion "no later than 14 days after the entry of judgment." Fed. R. Civ. P 54(d)(2)(B)(i). This rule applies even if a prevailing party has not sought fees in its pleadings, so long as "all the elements justifying such relief" have been established. *See Engel v. Teleprompter*, 732 F.2d 1238, 1242 (5th Cir. 1984). The Court has not entered final judgment. The parties have filed a joint report stipulating to the amount of the Assessors' and County's litigation expenses. ECF No. 116. The

Court will make a separate determination of whether the Assessors and County are entitled to these expenses.

The parties' joint pretrial statement did not result in a waiver of any of the Assessors' and County's claims.

## IV. THE APRIL 12TH OPINION IS NOT A *SUA SPONTE* SUMMARY JUDGMENT RULING

CARBO asserts that the Court's opinion was effectively a "summary judgment ruling issued *sua sponte* in favor of BOTA" because the Court's interpretations of the MOU, lease, and 2017 and 2018 agreements were made "without the benefit of a completed evidentiary hearing." ECF No. 117 at 16. CARBO claims that, accordingly, the Court had to resolve every reasonable inference "in favor of the non-movant (CARBO)." ECF No. 117 at 16. Specifically, CARBO argues:

> The Court . . . had to assume that CARBO would establish at trial that: (1) a force majeure event that rendered it impossible for it to operate the plants on a continuous 24-hour basis and maintain the required employment levels, (2) this condition arose in 2015 and remains in effect today, (3) CARBO's plants suffered substantial economic and functional obsolescence which reduced their fair market values in the amounts set forth in CARBO's appraisal reports, (4) if PILOT fees for these years were determined in accordance with Georgia law, then CARBO would be entitled to refunds from the County in the amounts it has requested plus interest, and (5) by refusing to timely address CARBO's timely appeals in accordance with Georgia law, BOTA acted in a stubbornly litigious manner that authorizes the Court to

>     award CARBO its litigation expenses under
>     O.C.G.A. § 13-6-11.

ECF No. 117 at 16. CARBO does not provide any reasoning to support this assertion. Regardless, CARBO's assertion fails.

A summary judgment motion is a motion filed by a party to dispose of claims on grounds that there is no genuine issue of material fact with respect to the claims. *See* Fed. R. Civ. P. 56(a). It is a movant's burden to show that there is no genuine issue of material fact, thereby requiring the court to view all facts and make all inferences in the light most favorable to the nonmoving party. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citing *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005)); *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014).

The Court's memorandum opinion decided contested factual issues after the presentation of extensive evidence and argumentation. Based on the evidentiary record, the Court determined that the MOU's valuation provisions governed and did not allow CARBO to take additional depreciation due to an alleged *force majeure* event. ECF No. 98 at 16. The amount of payments CARBO owes as a result of its inability to claim additional depreciation is uncontested and has been admitted into evidence. ECF Nos. 74-19–74-28, 74-103.

The Court's conclusions were not dependent on there being no genuine issues of material fact with respect to the claims asserted by CARBO or the Assessors. And contrary to CARBO's assertion, CARBO carried the burden of proof with respect to its claim for a refund on PILOTs. ECF No. 34 at 9–10. The Court was not required to draw any inferences in CARBO's favor with respect to its claims.

The Court's Memorandum Opinion, issued after an extensive evidentiary hearing, is not a *sua sponte* summary judgment ruling.

## V. THE COURT'S FINDINGS ARE SUPPORTED BY THE EVIDENTIARY RECORD

CARBO raises assertions that various findings made in the April 12 memorandum opinion were unsupported by the evidentiary record. The Court addresses these in turn.

CARBO first argues that the Court erred in finding that the parties' 2017 Settlement and subsequent conduct did not manifest an intent to depart from or modify the terms of the MOU. ECF No. 117 at 16. In interpreting the language of the 2017 Settlement, the Court found that the settlement merely recognized that there was a dispute between the parties concerning the valuation of the property, to which the settlement resolved only for PILOTs owed for the year 2017. ECF No. 98 at 9. The Court found the language of the settlement was not a modification of the MOU and did not indicate an intent to permanently depart from the MOU's terms. ECF No. 98 at 8–12. This same reasoning applied to subsequent agreements. ECF No. 98 at 12. These findings were supported by Georgia's law of contract modifications and the evidentiary record.

CARBO next argues that the Court erred in finding that the 2017 Settlement's reference to "fair market value" only acknowledged "(i) that the county did not concede that the figures agreed upon in the Settlement represented the value required by the MOU, and (ii) that the parties would return to the use of the regulations' 'fair market value' figure applying the method agreed upon in the MOU moving forward." ECF No. 117 at 17. CARBO argues that the phrase 2017 Settlement's reference to "fair market value" implied an intent to depart from the MOU's valuation procedures and return to the procedures set forth under Georgia law, which permit additional economic depreciation. ECF No. 117 at 17, 19.

CARBO's reasoning is unsupported by the record. We found that the phrase "fair market value" was used only as a reference for the value placed on property for taxation purposes and did not reflect an

agreement to permanently factor economic depreciation into the valuation of the property moving forward. ECF No. 98 at 9.

CARBO next argues that the Court erred in finding that "[t]wo key parties to the MOU (the Development Authority and the Board of Education) did not sign the 2017 Settlement." ECF No. 117 at 17–18. CARBO claims that "the record contains unrebutted written evidence that the County's Board of Education and its Board of Commissioners were fully aware of an expressly ratified the Agreement," and "[h]ad CARBO been allowed to continue presented its case, it would have established that the County Attorney signed off on the Agreement on behalf of the Development Authority," which subsequently ratified the agreement. ECF No. 117 at 18.

CARBO's arguments, even if true, do not change the Court's conclusion. Even if all the parties to the MOU agreed to a settlement of the 2017 PILOTs, the explicit language of the 2017 Settlement demonstrates a lack of intent to act as a permanent modification of the MOU's valuation procedures. ECF No. 98 at 9–10; ECF No. 70-2 at 4 ("After January 1, 2017 the Board will assess all properties related to this Settlement Agreement at their fair market values and the January 1, 2018 assessment values shall in no way be limited to the values agreed to herein.").

CARBO next argues that the Court erred in finding that that the Assessors lacked authority to enter into the 2017 Settlement. ECF No. 117 at 19. CARBO quotes the memorandum opinion, where we stated, "CARBO contends that, by that logic, the board of tax assessors did not have the authority to enter into the 2017 Settlement without involving those parties. . . . Even were CARBO's contentions regarding that authority valid, it would only mean that the 2017 Settlement was invalid." ECF No. 98 at 10–11, n.1. CARBO's alleged finding is not one the Court reached. The Court found that "the board of tax assessors had the authority to agree to the Settlement." ECF No. 98 at 11. The quoted statement was provided only as an explanation of the implications of CARBO's arguments. ECF No. 98 at 10.

CARBO finally argues that the Court erred in making the following findings: "CARBO disputes it failed to pay under the MOU or according to the Settlement, so it cannot not rely on an argument that the lease had terminated due to such a default" and "[n]or does CARBO sufficiently deal with the legal effect of the fact that both parties seemingly continued to act as though the lease had not terminated." ECF No. 117 at 18. CARBO argues that "neither CARBO nor BOTA claimed that PILOT fees due under the MOU had to be calculated in a manner different from what CARBO's tax obligations would be under Georgia law." ECF No. 117 at 19. CARBO also argues that, alternatively, "the parties stipulated in the Agreement that they would henceforth value the properties at their 'fair market value' under Georgia law and CARBO would no longer receive tax abatements and incentives' under the MOU, a clear indication that they mutually departed from the MOU's requirements." ECF No. 117 at 19. CARBO asserts that it would have ample evidence to rebut the Court's findings if it was allowed to continue presenting its case. ECF No. 117 at 19.

CARBO does not provide any new reason for the Court to reconsider its conclusion that the MOU remains valid and binding. CARBO's arguments have been considered and rejected. ECF No. 98 at 12–16. CARBO had ample opportunities to present evidence to support its claim that the parties agreed to permanently forego the benefits of the MOU and return to the regular *ad valorem* tax structure under Georgia law. CARBO did not do so because no such agreement exists. The parties' 2017 and 2018 settlements are in the record. Neither of these agreements may be interpreted as supporting CARBO's claim. The Court explained this interpretation in detail in its Memorandum Opinion. ECF No. 98 at 8–12.

CARBO claims that "the Court *sua sponte* concluded that the MOU imposed a valuation and depreciation method completely different from" Georgia law. ECF No. 117 at 7. CARBO asserts that "the MOU's methodology for depreciation does not conflict with Georgia law" because the MOU requires valuation based on the APM, which allows

for "physical deterioration, functional and economic obsolescence." ECF No. 117 at 8. CARBO supports this argument by testimony at trial stating that there is no inconsistency between the MOU and Georgia's valuation procedures, and if there were a consistency, Georgia's procedures control. ECF No. 117 at 8, 19.

There is no inconsistency between the MOU and Georgia's valuation procedures. The Court concluded that the MOU's valuation procedures were the same as the valuation procedures under Georgia law, but the parties stipulated to forego the ability to claim additional depreciation. ECF No. 98 at 4–8. The Court acknowledged that Georgia's tax regulations may allow an economic obsolescence deduction under some circumstances. ECF No. 98 at 4–5. The Court concluded that the MOU's 24-hour operation requirement was a valuation provision that provided an express exclusion foreclosing the possibility of considering additional deprecation due to economic obsolescence allowed under the regulations. ECF No. 98 at 5. CARBO offers no reason to reconsider this finding.

The Court's findings are supported by the evidentiary record and Georgia law.

## VI. CARBO'S REMAINING ARGUMENTS FAIL

The Court's opinion concluded that the MOU's language foreclosed the ability of considering additional economic depreciation due to a *force majeure* event. ECF No. 98 at 7–8. CARBO argues that this finding is (1) contrary to the terms of the MOU, (2) conflicts with the testimony of the drafter of the MOU, (3) undermines the purpose and intent of tax abatement arrangements, (4) violates Georgia's public policy against implied forfeitures, (5) misapplies the effect of *force majeure* under Georgia law, and (6) creates uncertainty for potential participates in bonds-for-title arrangements. ECF No. 117 at 9–10.

The Court's conclusion is not contrary to the terms of the MOU. The Court found that the MOU's *force majeure* provision applies only to the minimum job requirement and CARBO's alleged ability to claim

additional depreciation due to inutility and economic obsolescence was in contravention with the language and intent of the MOU. ECF No. 98 at 6–8. CARBO attempts to support its argument by citing Paragraph 8.4 of the 2008 lease. ECF No. 117 at 11. The 2008 lease provides no language permitting the suspension of performance in the event of a *force majeure*. Paragraph 8.4 only provides for indemnity under circumstances that have nothing to do with *force majeure*. ECF No. 70-26 at 48–50.

CARBO also argues the Court erred in "suggesting that CARBO, by failing to operate its plants on a 24/7 basis, was somehow in default under the Lease." ECF No. 117 at 11. This is not what the Court's opinion concluded. The Court found that the 24-hour operation requirement in the MOU was a stipulation to the valuation procedures to be used, not an express covenant for 24-hour operation. ECF No. 98 at 6–7. The Court stated that, if the provision was an express covenant, then CARBO would have been in breach for failing to operate continuously. ECF No. 98 at 7. This explanation was used only to highlight the fact that, under equitable principles, CARBO would not be permitted to benefit from a breach by factoring inutility into PILOT payments while failing to operate continuously. ECF No. 98 at 7.

The Court's opinion is also not contrary to the MOU drafter's testimony. Kevin Brown's testimony did not conclude that the MOU permits additional depreciation due to a *force majeure* event. *See* ECF No. 87 at 264–68, 289–90. The testimony did not preclude a finding by the Court that a *force majeure* event had no impact on CARBO's duty to pay the PILOTs under the valuation methods set out in the MOU. *See* ECF No. 98 at 15–16.

CARBO next claims that the Court's opinion violates Georgia's public policy against implied forfeiture because the Court allegedly found that the "MOU implicitly but unconditionally forfeited CARBO's ability ever to claim additional depreciation in the form of physical, economic, or functional obsolescence, a right otherwise available to every taxpayer in Georgia." ECF No. 117 at 13–14; *see King Indus.*

*Realty, Inc. v. Rich*, 224 Ga. App. 629, 635 (1997) (alteration in original) ("[W]e may not *imply* such a forfeiture. '[T]he settled public policy of this state is that forfeitures are not favored. While forfeitures are not unlawful, the law does not favor them, and all ambiguities are to be resolved against their existence.'" (quoting *APAC-Georgia, Inc. v. Dept. of Transp.*, 221 Ga. App. 604, 605 (1996))). CARBO misconstrues the Court's opinion. The Court never held that CARBO unconditionally forfeited its ability to ever claim additional depreciation. On the contrary, we held:

> The MOU contemplated CARBO's use of the financial benefits it received to invest in the plants so that they would continue to be operational and continue to employ people in the county. If that was no longer a feasible goal for the reasons CARBO states in its complaint and on the record, CARBO had the ability to terminate the agreement, reacquire the property, and return to a standard tax structure. CARBO did not terminate the agreement, so it was bound to the terms of the MOU.

ECF No. 98 at 8. The Court concluded that CARBO was free to forego the MOU's benefits at any time and return to a standard tax structure, which may permit additional depreciation. CARBO's choice to continue receiving the benefits of the MOU while foregoing its ability to claim additional depreciation cannot be construed as an implied forfeiture.

CARBO next claims that the Court's opinion "conflicts with Georgia case law regarding the effect of a *force majeure* event on a party's obligation to operate continuously." ECF No. 117 at 14. CARBO relies on *Hamilton Mill Theatre Dev. V. Regal Cinemas, Inc.*, 366 Ga. App. 124 (2022). CARBO's reliance on the case is misplaced. *Hamilton Mill* involved the interpretation of the specific *force majeure* provision in the parties' lease agreement. Based on its interpretation of the

parties' agreement, the *Hamilton Mill* court held that the *force majeure* provision excused the tenant from operating its movie theater due to the COVID-19 pandemic. *See id.* at 131–32. *Hamilton Mill* did not involve any general Georgia law on *force majeure*. *See id.* This Court's memorandum opinion was based on its interpretation of the *force majeure* provision in the parties' MOU and is entirely consistent with *Hamilton Mill*.

CARBO finally claims that the Court's opinion creates "grave uncertainty for all other Georgia taxpayers and country development authorities participating in or contemplating similar bonds-for-title arrangements." ECF No. 117 at 10. Again, CARBO misconstrues the Court's opinion. The Court only interpreted the provisions of the parties' specific MOU and lease agreements, finding that the parties did not contract for the ability to claim additional depreciation based on a *force majeure* event. Nothing in the Court's opinion should be read to preclude others from contracting for the ability to do so.

## CONCLUSION

CARBO's motion for reconsideration of the Court's April 12, 2023, Memorandum Opinion is denied.

SIGNED 02/08/2024

                                                   Marvin Isgur
                                   United States Bankruptcy Judge